IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Harley David Crosby, | ) CIVIL ACTION NO. 2:15-1455-RMG-BM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| | ) |
| South Carolina Department of Public | ) |
| Safety, South Carolina Highway Patrol, | ) |
| James C. Filyaw, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

This action was originally filed by the Plaintiff in the South Carolina Court of Common Pleas alleging state law causes of action for negligence, outrage, and assault and battery, along with a federal claim of excessive force in violation of the Fourth Amendment of the United States Constitution. See Complaint (Court Docket No. 1-1). The Defendants removed this case to this United States District Court on April 1, 2015 on the ground that Plaintiff has asserted a claim arising under the Constitution and laws of the United States. See 28 U.S.C. § 1441(a) and (c). Although Plaintiff was originally represented by counsel, he is now proceeding in this matter pro se. See Order (Court Docket No. 20).

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on November 18, 2016. As the Plaintiff is now proceeding pro se, a Roseboro order was entered by the Court on November 21, 2016, advising Plaintiff of the importance of a motion for



summary judgment and of the need for him to file an adequate response.  Plaintiff was specifically

advised that if he failed to provide a proper response, the Defendants' motion may be granted, thereby

ending his case.  Plaintiff thereafter filed a response in opposition to the Defendants' motion on

December 29, 2016, to which the Defendants filed a reply memorandum on January 5, 2017.

The Defendants' motion is now before the Court for disposition.[1]

### Background and Evidence[2]

On November 24, 2012, Plaintiff and another individual were involved in an accident.

Trooper Towns, the responding officer, explained to both of them that he was not going to find either

of them at fault.  See Plaintiff Deposition, p. 66.  Although Plaintiff has not been able to substantiate

his belief that Towns and the other driver knew each other, he believes that they did and claims that

is why Towns was unwilling to find the other driver at fault.  See Plaintiff Deposition, pp. 65-66.

Plaintiff testified that he went to Troop 6 headquarters of the South Carolina Highway

Patrol multiple times to make and discuss his complaint about how Towns had handled this accident

and to give statements relating to the investigation of Towns' handling of this accident.  See Plaintiff

Deposition, p. 69.  On two of those occasions, Plaintiff met with Lieutenant Shawna Gadsden, and

although they did not agree on the outcome, Plaintiff testified that Gadsden handled his complaint

very professionally.  See Plaintiff Deposition, pp. 70-71.

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this motion is dispositive, this Report and Recommendation is entered for review by the Court.

[2]The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).



A Form 310 was eventually issued for the accident.[3]  Plaintiff did not believe that the totality of his complaint had been resolved, however, and on February 20, 2013, Defendant Captain James C. Filyaw called him to tell him that he was going to be investigating Plaintiff's complaint against Towns.  See Plaintiff Deposition, pp. 71-72.  Plaintiff testified that he told Filyaw that internal affairs should conduct an outside investigation, and that he did not believe it was appropriate for Filyaw to conduct the investigation.  See Plaintiff Deposition, pp. 72-73.  Even so, despite his belief that Filyaw should not handle the investigation, Plaintiff agreed to go talk with Filyaw about his complaint.  See Plaintiff Deposition, pp. 71-72, 79.

On February 21, 2013 (the following morning), Plaintiff voluntarily went to Troop 6 headquarters to meet with Filyaw.[4]  Plaintiff testified that when he entered Filyaw's office, Filyaw

---

[3]This is a departmental collision report.  On January 20, 2013, Towns received an informal counseling letter indicating that he should have erred on the side of caution and completed a Form 310 collision report indicating both parties as non-contributors to the accident, which would have prevented unnecessary follow-up regarding this collision, and would have discredited any claims of bias against either of the parties.  See Plaintiff's Exhibit A.  Although Plaintiff contends that he did not know that this informal counseling letter had been issued, he has not disputed that he did receive a Form 310 collision report (which was issued after Towns' informal counseling letter) which indicated both parties were non-contributors.  See Court Docket No. 62-1, p. 4.

[4]To the extent that Plaintiff attempts in his reply brief to now argue that he was forced to attend this meeting, any such assertion conflicts with the allegations in the Complaint that "Filyaw called the Plaintiff to set a meeting for the two of them to discuss the accident and subsequent investigation" [see Complaint, ¶ 11] as well as Plaintiff's sworn deposition testimony that "I went there because he wanted to talk about it.  Okay.  So you want to talk about it, we'll talk.  I don't - just because I don't agree with it don't mean it wasn't the proper thing to do, so I was there."  See Plaintiff Deposition, p. 79.  Plaintiff cannot save his claim from summary judgment by making an assertion in his reply brief that contradicts not only his sworn allegations in his verified Complaint, but also his deposition testimony.  Bickerstaff v. Vassar College, 196 F.3d 435, 455 (2d Cir. 1999) ["It is beyond cavil that a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that...contradicts the affiant's previous ... testimony."] (internal quotations and citations omitted); Kennedy v. Allied Mutual Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991) [party cannot create issue of fact by contradicting prior sworn testimony].  Therefore, Plaintiff's

(continued...)



would not shake his hand and directed him to a chair away from his desk in the corner of the office.[5]

See Plaintiff Deposition, pp. 81-82.  While Plaintiff testified that he did not yell at Filyaw, he

concedes that he was talking a "little bit louder", Plaintiff says because he was sitting in the corner.

See Plaintiff Deposition, p. 88.  Plaintiff also admitted that, during the conversation, Filyaw told him

to stop pointing at him, but testified that he explained to Filyaw that he just talked with his hands and

was not trying to threaten him.  See Plaintiff Deposition, p. 89.  Even so, later in the conversation

Filyaw told Plaintiff a second time to stop pointing at him.  Plaintiff testified that he did not know

what to say because he just talks with his hands, and at that point Filyaw just "snapped."  See Plaintiff

Deposition, p. 98.  According to Plaintiff, Filyaw stood up, pulled up his pants by his gun's holster[6],

and ran around the side of his desk.  See Plaintiff Deposition, p. 99.  Plaintiff testified that he

responded by standing up himself, at which time Filyaw pushed him with the palms of his hands in

his chest and reared back to hit him.  See Plaintiff Deposition, pp. 99, 101.  Plaintiff testified that

Sergeant Quincy Brown came running into the room at that point, grabbed Filyaw, and almost threw

---

[4](...continued)
contradictory statements in his reply brief do not provide a basis for denial of the Defendants' motion
for summary judgment.

[5]Defendant Filyaw's version of the encounter varies greatly from the Plaintiff's version -
including, but not limited to:  he offered to shake Plaintiff's hand; Plaintiff added facts during the
meeting that he had not previously alleged; Plaintiff became irate and did not make a "whole lot of
sense"; Plaintiff pointed his finger at Filyaw several times; Plaintiff called him a racist; Filyaw never
put his hands on the Plaintiff; that when it became apparent that the issue could not be resolved, he
told Plaintiff that the meeting was over; and that Brown walked into his office at that point.  See
Plaintiff's Exhibit C (Filyaw's 8/21/2013 audio interview with Chief Phelps, transcribed, pp. 4-7).
However, the undersigned has credited Plaintiff's version of events for purposes of consideration of
the Defendants' motion for summary judgment.  Pittman, 87 F.3d at 118.

[6]Although Plaintiff referenced the fact that Filyaw had a gun in his testimony, he admits that
Filyaw did not pull his gun out and never touched his gun.  See Plaintiff Deposition, pp. 99, 110-111.



him against the little table in the room. See Plaintiff Deposition, p. 99. Plaintiff testified that Filyaw did not have a chance to hit him because of Brown's intervention[7]. See Plaintiff Deposition, p. 101.

Plaintiff testified that at that point Brown was trying to get him out of there and was telling him where to go to leave. See Plaintiff Deposition, p. 112. They went out into the hallway and Brown was telling him to go down the hallway, while positioning himself behind Plaintiff and in front of Filyaw. See Plaintiff Deposition, p. 113. Plaintiff testified they went down the hall and Brown opened the door to the stairwell for Plaintiff to leave, but as he was going down the stairs, Filyaw (who was behind Brown) reached around Brown and struck Plaintiff in the back of the neck causing him to slip down two steps until he caught himself on the stairwell. See Plaintiff Deposition, pp. 115-117. Plaintiff testified that he told Filyaw at that point that he was trying to leave, that he was not trying to cause a problem, and that he did not want to fight him. See Plaintiff Deposition, p. 118. Plaintiff testified that Filyaw then hit him again before he got out of the stairwell. See Plaintiff Deposition, p. 119.

However, in addition to Filyaw's version of the facts greatly deviating from Plaintiff's, Plaintiff has himself submitted as exhibits sworn statements from Brown as well as sworn statements from Filyaw's secretary, Marla Morris, which also vary greatly from Plaintiff's version of the facts, including that they both heard Plaintiff raising his voice, that at no time did Filyaw make contact with the Plaintiff, and that Brown had to escort Plaintiff out of the building because of Plaintiff's defiant posturing manner. See Brown Affidavit & Brown Voluntary Statement (Court Docket No. 62-1, pp.

---

[7]At other times in his deposition, Plaintiff also characterizes the initial push by Filyaw as being a "hit". See Plaintiff Deposition, pp. 100, 104. Plaintiff further testified that he believed that if Brown had not come into the office, Filyaw was going to draw his gun and shoot him. See Plaintiff's Deposition, p. 110.



72-74); see also Morris Affidavit & Morris Voluntary Statement (Court Docket No. 62-1, pp. 75-78).

As such, Plaintiff's own exhibits call into question his testimony. Bickerstaff, 196 F.3d at 455 ["It

is beyond cavil that a party may not create an issue of fact by submitting an affidavit in opposition

to a summary judgment motion that...contradicts the affiant's previous ... testimony."] (internal

quotations and citations omitted); see also Sylvia Dev. Corp. v. Calvert County, MD., 48 F.3d

810,818 (4th Cir. 1995)[explaining that while the party opposing summary judgment is entitled to

the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be

within the range of reasonable probability" and that ["[w]hether an inference is reasonable cannot be

decided in a vacuum; it must be considered in light of the competing inferences to the contrary"

(internal quotation marks omitted) ].

## Discussion

The Defendants have moved for summary judgment on all of Plaintiff's claims.

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the

pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991).

Once the moving party makes this showing, however, the opposing party must respond to the motion

with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d

872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a

complaint involving a pro se litigant to allow the development of a potentially meritorious case, see

Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal

- 6 -



construction does not mean that the Court can ignore a clear failure of the evidentiary facts to establish a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment on Plaintiff's only federal cause of action (his excessive force claim under the Fourth Amendment).[8]  Plaintiff's remaining state law causes of action should then be remanded back to state court for disposition. Mills v. Leath, 709 F.Supp. 671, 675-676 (D.S.C. 1988) [Noting that federal courts should generally decline to exercise pendant jurisdiction over remaining state law claims after dismissal of federal claims in a lawsuit].

## I.

Plaintiff's allegations surrounding his only federal claim relate to his meeting with Filyaw on February 21, 2013.  As a state official, Filyaw[9] is subject to suit for damages in his

---

[8]In his response brief, Plaintiff also makes reference to the Fifth and Fourteenth Amendments, while also discussing SLED's allegedly improper investigation, a retaliation claim, and a civil conspiracy claim.  However, to the extent Plaintiff is now attempting to assert these new claims in this lawsuit, they have not been considered. Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir.2007) [Party may not expand its claims to assert new theories in response to summary judgment]; White v. Roche Biomedical Labs, Inc., 807 F.Supp. 1212, 1216 (D.S.C.1992) [Parties generally not permitted to raise a new claim in response to a motion for summary judgment]; Horton v. Donley, No. 07-2316, 2009 WL 2782226 at * 10 (D.S.C. Aug. 27, 2009), aff'd, 367 Fed.Appx. 400 (4th Cir. 2010)[holding that new retaliation claim raised at summary judgment stage, but not in complaint, was improper].

[9]Filyaw is the only named Defendant with respect to this cause of action.  Complaint, ¶ 33. Even if Plaintiff was attempting to also assert this cause of action against the other two (2) named Defendants, as state agencies or entities they would be entitled to dismissal. Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 99 (1984); Brooks-McCollum v. Delaware, 213 Fed.Appx. 92, 94 (3rd Cir. 2007); Metz v. Supreme Court of Ohio, 46 Fed.Appx. 228, 236-237 (6th Cir. 2002); (continued...)



individual capacity for this claim under 42 U.S.C. § 1983.[10] <u>Will v. Michigan Dept. of State Police</u>,

4491 U.S. 58, 71 (1989).

Plaintiff alleges in this cause of action that Filyaw violated his "constitutional rights

in violation of the Fourth Amendment of the United States Constitution by wrongfully using

excessive and unnecessary force" against him. <u>Complaint</u>, ¶ 33. "The Fourth Amendment governs

claims of excessive force during the course of an arrest, investigatory stop, or other seizure of a

person". <u>Hayes v. Knight</u>, No. 13-816, 2015 WL 225753, at * 9 (D.S.C. Jan. 16, 2015), citing <u>Riley</u>

<u>v Dorton</u>, 115 F.3d 1159, 1161 (4th Cir. 1997) and <u>Graham v. Conner</u>, 490 U.S. 386, 388 (1989).

Hence, in order to establish a Fourth Amendment excessive force claim (as opposed to his state law

claim for assault and battery),  Plaintiff must have evidence to show that a "seizure" occurred. <u>See</u>

<u>Robinson v. Brown</u>, No. 15-387, 2016 WL 4975021 at * 3 (D.S.C. Sept. 19, 2016) [Noting that an

individual is "seized" under the Fourth Amendment only when there is a termination of freedom of

movement through means intentionally applied]; <u>United States v. Melo</u>, No. 89-5554, 1989 WL

117839 at *1 (4th Cir. 1989) [Fourth Amendment protection is triggered when a person is seized by

law enforcement officers].  However, Plaintiff has submitted no evidence to show that he was ever

---

[9](...continued)
<u>see</u> <u>also</u> <u>Coffin v. South Carolina Dep't of Social Services</u>, 562 F.Supp. 579, 583-585 (D.S.C. 1983);
<u>Belcher v. South Carolina Board of Corrections,</u> 460 F.Supp. 805, 808-809 (D.S.C. 1978).

[10]42 U.S.C. § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method
for vindicating federal rights elsewhere conferred.'" <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994)
(quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979)).  A civil action under § 1983 allows "a
party who has been deprived of a federal right under the color of state law to seek relief." <u>City of</u>
<u>Monterey v. Del Monte Dunes at Monterey, Ltd.</u>, 526 U.S. 687, 707 (1999).  To state a claim under
§ 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or
laws of the United States was violated, and (2) that the alleged violation was committed by a person
acting under the color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).



arrested or "seized" during the time period at issue.

A seizure would occur when "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Slocumb, 804 F.3d 677, 681 (4th Cir 2015)(quoting United States v. Gray, 883 F.3d 148, 152 (4th Cir. 2009)).  Since the test is an objective one, its proper application is a question of law.  United States v. Sullivan, 138 F.3d 126, 133 (4th Cir. 1998).

> In applying the totality of circumstances test, courts look to numerous factors including the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the officer's statements to others present during the encounter, the threatening presence of several officers, the potential display of a weapon by an officer, and the physical touching by the police of the citizen. . . . Most important, for our present purposes, numerous courts have noted that the retention of a citizen's identification or other personal property or effects is highly material under the totality of circumstances analysis.

See United States v. Weaver, 282 F.3d 302, 310 (4th Cir. 2002)(internal citations omitted).

Significantly, even the presence of one or more of these circumstances *does not* mean that an arrest (or seizure) has occurred.  United States v. Mayberry, No. 12-153, 2013 WL 3560968 at * 5 (D.Vt. July 11, 2013).

In this case, even accepting all of the Plaintiff's assertions as set forth in his testimony to be true (even though, as noted, Plaintiff has himself submitted evidence that contradicts his testimony), the totality of the circumstances fails to establish a question of fact as to whether a reasonable person in Plaintiff's position would not have felt free to leave.  Slocumb, 804 F.3d at 681.

Therefore, Plaintiff was not seized for purposes of a Fourth Amendment excessive force claim.  It is undisputed in the evidence that Plaintiff voluntarily went to the police station to pursue a complaint he had against an officer, that he was never himself under any investigation of any type, that he met



with only one officer (Filyaw)[11] which took place in his office with the door open, and that he was never arrested or threatened with arrest.  Further, although Plaintiff alleges that he and Filyaw disagreed about Filyaw's investigation of the officer, he has submitted no evidence that Filyaw's language or tone ever indicated he had to remain in his office or that there was any retention of any of his personal effects.  Rather, the meeting was solely for the purpose of discussing Plaintiff's complaint, it was  not any type of criminal investigation of the Plaintiff, and there was no detention of the Plaintiff nor any arrest.  It would be strange indeed to find that Plaintiff being instructed to *leave* the premises amounted to a seizure of him.

With regard to Plaintiff's claims of physical contact, Plaintiff testified that Filyaw pushed him away from him after asking Plaintiff to quit pointing at him, at which time Brown immediately entered the office, telling him to leave the building and escorting him out of the building. See Plaintiff Deposition, p. 99.  With regard to the two subsequent alleged contacts in the stairwell, there is no evidence that Filyaw, Brown, or anyone else was trying to restrain the Plaintiff or was telling him he had to remain at that time.  Rather, Plaintiff admits that he was in the stairwell leaving, that Brown had told him to leave, and was escorting him out at that point.  Again, no evidence of a Fourth Amendment "seizure" of the Plaintiff is presented in this evidence.[12]

_____

[11]Plaintiff testified that Brown only entered the room at the end of the meeting and that Brown then escorted him out of the building.  He makes no allegation or claim that Brown participated in the meeting or ever tried to detain him.

[12]While "physical touching" can be one of many factors suggestive of a "seizure", it would need to occur under circumstances inferring restraint and that a reasonable person would have believed indicated that he was not free to leave. Cf. Williams v. Nassau, No. 14-5959, 2016 WL 6994312, at * 6 (E.D.N.Y. Nov. 30, 2016).  No such inference is shown in the facts presented in this case.  See Weaver, 282 F.3d at 309 ["a seizure warranting protection of the Fourth Amendment occurs when, in view of the totality of the circumstances surrounding the stop, a reasonable person
(continued...)



Accordingly, although Plaintiff may or may not have evidence sufficient to pursue his state law assault or assault and battery claim against Filyaw, he has failed to show that he was seized for purposes of a Fourth Amendment claim.  Therefore, Plaintiff's only federal claim should be dismissed.

**II.**

All of Plaintiff's remaining causes of action are state law claims.  When federal claims presented in a case originally filed in state court are dismissed, any remaining state law claims should be remanded back to state court for resolution under the general doctrine developed in United Mine Workers v. Gibbs, 383 U.S. 715 (1966). See In Re Conklin, 946 F.2d 306, 324 (4th Cir. 1991); Nicol v. Imagematrix, Inc., 767 F.Supp. 744, 746, 749 (E.D.Va. 1991); Carnegie-Melon v. Cohill, 484 U.S. 343 (1988); Taylor v. Waters, 81 F.3d 429, 437 (4th Cir. 1996).  This doctrine recognizes the state courts's role in determining whether dismissal of state law claims is warranted.  Hence, to the extent the Defendants seek dismissal of these remaining claims, that is a decision that should be made by the state court. See Lovern v. Edwards, 190 F.3d 648, 655 (4th Cir. 1999) ["[T]he Constitution does not contemplate the federal judiciary deciding issues of state law among non-diverse litigations"].  Remand of these remaining state law causes of action will not only allow the more appropriate court to rule on these exclusively state law issues, but if dismissal were to be denied, it would be much more appropriate for these state law claims to be considered and tried by the state courts.  Mills, 709 F.Supp. at 675-676 [Noting that federal courts should generally decline to exercise pendant

---

[12](...continued)
would not feel free to leave or otherwise terminate the encounter"] (internal citations omitted); see also Nugent v. Sheppard, 318 F.Supp. 314, 316 (N.D.Ind.1970) [An assault is not "automatically transmuted into a violation of Constitutional rights simply because the guilty party is a policeman"].



jurisdiction over remaining state law claims after dismissal of federal claims in a lawsuit].

Therefore, as Plaintiff's only federal claim originally asserted in this action is recommended to be dismissed, the remaining state law causes of action should be remanded back to state court for disposition.[13]  Carnegie-Mellon, 484 U.S. at 350, n. 7 ["[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state law claims."]; Gibbs, 383 U.S. at 726 ["Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well"].

### Conclusion

Based on the foregoing, it is recommended that Defendants' motion for summary judgment be **granted** with respect to Plaintiff's federal cause of action for excessive force.  This case should then be remanded back to state court for disposition of Plaintiff's remaining state law causes of action.  See 28 U.S.C. § 1447 (c) ["If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded"] (emphasis added).

The parties are referred to the Notice Page attached hereto.

 

_____

January 11, 2017                                  Bristow Marchant
Charleston, South Carolina                United States Magistrate Judge

---

[13]To the extent Plaintiff has asserted a state law excessive force claim against Filyaw under the *South Carolina* Constitution; see Complaint, ¶ 33; that claim would survive dismissal of Plaintiff's *federal* Fourth Amendment claim and would be part of plaintiff's remanded state law claims.



### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

